# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

*Plaintiff,*

v.                                                    Case No. 3:21-cr-00092-jdp

BAHRULLAH NOORI,

*Defendant.*

## OPPOSITION TO THE GOVERNMENT'S MOTION
## FOR ENTRY OF PROTECTIVE ORDER GOVERNING DISCOVERY

Bahrullah Noori, by counsel, files this response to the government's motion for a protective order. R.20.

Noori is charged with sexual assault crimes concerning two minors at Fort McCoy. The government has moved for a protective order preventing him from retaining copies of the video interviews and medical records of the purported victims to review on his own, at the jail; instead, it demands that the defense be with him (at the jail) every time he wants to review those records and statements. That evidence presents the government's best evidence of a crime and (by the same token) the most exculpatory evidence that no crime occurred. Noori's ability to review, analyze, and communicate with his counsel about those materials is central to preparing his defense. With that, the

government's motion fails to appreciate (or even acknowledge) the logistical difficulties of this case and how the protective order would exacerbate those challenges. The government's motion also fails to establish "good cause"; instead of establishing an actual threat or harm, it cites generalized concerns that the purported victims' will suffer emotional harm. As explained below, that's not enough to justify the protective order and the motion should be denied.

I.     **The burdens the defense faces will only get worse with the protective order.**

Noori is an Afghan national who was brought to Fort McCoy a little over a month ago. His native language is Pashto, and he speaks little English, has no family here, and is unfamiliar with America's laws or culture. The language barrier has made communication extremely difficult; the defense can only communicate with him through an interpreter and this has to be done telephonically. During these calls, we cannot provide documents to the interpreter; instead, we have to read a line, wait for it to be translated, and then repeat the process.

This, of course, would not happen when an actual interpreter could meet with the defense and Noori—in person. But, as the defense has learned, Pashto interpreters are not easy to come by. In the State of Wisconsin, there is not a single certified interpreter who can meet (in person) with the defense and Noori. The defense has found *one* interpreter in Northern Minnesota who is certified and willing to work on the case in person. But the logistics of having that person come here are fraught with difficulty. Given that interpreter's limited availability, the cost and difficulty of travel, and the fact

that the defense doesn't have all the discovery yet, the defense has yet to have him come here. And, once he does arrive, other logistical challenges make use of an in-person interpreter time consuming and expensive. As the Court may know, jails are not always conducive to a day-long meeting with an interpreter and a client—often you can only get an hour or so block of time and even that can be rife with problems.

When the defense initially objected to the protective order, it cited these logistical problems. The defense told the government it wasn't looking for a fight over discovery. But given the realities of the incredibly taxing situation and defense counsel's inability to communicate easily with Noori, the defense could not agree to any protective order that prevented the jail from keeping copies of the discovery for Noori to review. Indeed, the best situation for the defense will be that Noori can watch the videos at the jail and then (through the translator) explain to the defense all the points that we need to focus on—inconsistencies, lies, or (very, very likely) errors in the translation. The defense can then follow along in the office and go-back-and-forth with the interpreter. The government, however, would not budge.

It then filed the instant motion for a protective order. Specifically, it insists that the defense attorney or an investigator go to the jail and watch the videos with Noori—that is the only way he can see the most important evidence in this case. R.20:6 ¶ 2; *see also id.* at 1–2 ¶ 2 ("protected material" refers to "a recorded interview of each juvenile victim and medical records of each juvenile victim"). The proposed order also states that "[p]otential witnesses and their counsel may be shown copies of the materials as necessary to prepare the defense, but may not retain copies without prior permission of

the Court." *Id.* at 7 ¶ 3. In other words, when it comes to allowing Noori to review and study the most important portion of the discovery in his own case, the government proposes to treat him no differently than a potential witness.

Aside from how troubling that proposal is as a normative matter, it also is unduly burdensome to the defense. A member of the defense team cannot go to Sauk County Jail (an hour from downtown Madison, each way) to sit with Noori to review each video and every medical record, as many times as Noori would like—or as many times as is needed for those materials to inform the defense's trial strategy.[1] And, given the set up at Sauk County Jail, during each visit Noori would have to take notes about the videos and records in Pashto. Then, when the defense is able to arrange a phone call with an interpreter and Noori, Noori can discuss his notes with his counsel—albeit (because of the protective order) without having the actual records in front of him. To put it mildly, it is not a good use of the defense's time and limited resources to sit in a room with Noori while he reviews discovery. *See, e.g., United States v. Walker*, No. 2:18-cr-37-FL-1, 2019 WL 4412909, at *11–12 & n.2 (E.D.N.C. Sept. 13, 2019) (modifying protective order that previously prevented incarcerated defendant from retaining a copy of discovery to review outside counsel's presence because that restriction had proven "burdensome and time-consuming" in practice). Under such circumstances and constraints, the defense

---

[1] To be clear, the defense has not asked for Mr. Noori to be moved yet to Sauk County Jail, but that is where defendants who need access to their discovery are kept and it is certainly where he will go once the defense has all the discovery.

needs the ultimate amount of flexibility possible in reviewing the discovery and the government's protective other is the antithesis of flexibility.

## II. The government has cited no "good cause" explaining why Noori cannot retain copies of the two videos and medical records.

At the same time that the government proposes to burden the defense, it hasn't supported its proposal with the necessary showing to justify it. Under Rule 16(d), "the court may, *for good cause*, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," "subject always to the Sixth Amendment's limitations." Fed. R. Crim. P. 16(d)(1) (emphasis added); *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015). The government bears the burden of demonstrating that "good cause" supports its request for a protective order. *See* 2 Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure* § 262 (4th ed.; West Apr. 2021 Update) ("The burden is on the party seeking the protective order to make a sufficient showing of why it is needed."). And generalized assertions of hypothetical harm cannot satisfy the "good cause" standard. *See, e.g.*, *United States v. Stone*, No. 10-cr-20123, 2012 WL 137746, at *2 (E.D. Mich. Jan. 18, 2012) (denying government's motion for protective order where government "only put forward broad allegations supported by case law that is largely inapposite"). Yet that's precisely what the government offers here.

The government rests its claim of "good cause" on a broad assertion that the confidentiality provisions of 18 U.S.C. § 3509(d) must be met and that the Court should "safeguard[] the psychological well-being of a minor." R.20:4 ¶ 7 (internal quotation marks omitted). But that's just boilerplate—there's nothing to suggest that in *this* case

that's an actual concern. And that's what the law demands: a showing that *in this case* concerns make the use of a protective order necessary; vague, generalized assertions just don't cut it. On that point, a court in the Eastern District of Wisconsin recently explained that "vague assertions" describing "ordinary characteristics of many federal prosecutions" are not enough to justify "restricting discovery in the severe manner proposed by the government"—specifically, requiring the defendant to meet with his attorney to review the discovery, rather than retain a copy to review on his own. *See* Order at 2–3, *United States v. Karst*, No. 1:19-cr-190-JPS (E.D. Wis. Jan. 17, 2020), R.24. In a point that resonates here, the court stressed that forcing the defendant to make a burdensome three-hour round-trip drive from Oshkosh to Milwaukee and back "any time he wished to review any of the discovery" would be "disproportionate to the vague concerns the government expressed in its motion." *Id.* at 3.  Indeed.

Here, the government makes the same sort of unduly burdensome proposal on equally generalized claims of harm. It hasn't advanced some particular concern from either of the alleged victims, nor has it explained how the proposed order would remedy that concern. It makes *no* effort to explain why the measure it proposes would ameliorate even its generalized fears, let alone why it "is the least intrusive means for protecting the minor victims' well-being." R.20:4 ¶ 7. It just claims that it would and it is. And in doing so, it doesn't engage in any discussion about *why* its fears attach to these particular interviews and medical records. Surely, with the medical records, the government simply could redact the minors' names, just as it has redacted those names throughout the discovery produced so far. *See id.* at 2 ¶ 2. Nor does it explain how someone in the jail

could overhear the minors' names or otherwise identify them—particularly given that the minors' statements are not in English.

Putting all that aside, it should be patent that the standard protocol for handling electronic discovery at Sauk County Jail (the one we all subscribe to in hundreds of cases) satisfies all the government's stated concerns. In cases like this involving electronic discovery, the process is:

- The defense sends the discovery on a flash drive to the Sheriff's office, noting the case number and process for accessing the discovery.

- The flash drive is kept with a Sargent, who the defendant can contact to request 50 minutes of time each day to review the discovery—depending on a computer's availability.

- At the scheduled time, the Sargent then sets up the flash drive for the inmate and, after 50 minutes, retrieves it.

- The process is repeated as many times as the defendant requests.

Through this all, the protected materials remain in a "secure place to which no person who does not have reason to know their contents has access." *See* 18 U.S.C. § 3509(d)(1)(a)(i). The information is kept on a flash drive and in the possession of law enforcement. And it is only available to the defendant in an area with a computer (i.e., not in his cell, whether others might be present) for a limited period each day. The government's concerns about widespread disclosure of the protected materials causing reputational harm, "emotional trauma," or "personal embarrassment" to the purported victims (R.20:4 ¶ 6) simply do not square with this setup—a set up that we use in all of our other cases involving minor victims.

What's more, there is no reason to believe that Noori would engage in anything untoward with the discovery. For him to release these videos or records, he would have to somehow sneak them past the Sauk County Jail staff, bring them to his cell, figure out how to mail a flash drive, and then have someone to mail it to. Again, it's important to remember: he speaks limited English; he has no family and no friends in the United States; he has no money to pay for postage; and there is no reason to think that he would even be inclined to do such a thing if he could. *See, e.g.*, *United States v. Cross*, No. 20-cr-9, 2020 WL 2542818, at *3 (E.D. Wis. May 19, 2020) (granting motion to vacate protective order where government "ha[d] not shown any reason to fear that [defendant] will disclose the identity of the CI [confidential informant] or that dissemination of the discovery to [defendant] poses any threat to the CI").

As a final matter, the one case cited in the government's brief does not counsel differently. In *Globe Newspaper Co. v. Superior Court*, the Supreme Court held that a newspaper's First Amendment rights *were violated* by a state law that required the courtroom to be closed while minors testified in a case involving their alleged rape. 457 U.S. 596, 602 (1982). While the Supreme Court recognized that "safeguarding the physical and psychological well-being of a minor" was a compelling interest (a line the government plucks out as though it were the holding), the Court then went on to conclude that that interest alone *could not* justify a mandatory courtroom closure rule. *Id.* at 607–08. Instead, it reasoned, "a trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim," taking into consider the particular circumstances. *See id.* at 608. The government's broad-strokes

justification for the protective order in this case is no different than the mandatory closure rule the Supreme Court struck down in *Globe Newspaper*.

## CONCLUSION

Given the language barriers, defending Noori is an exceedingly difficult task, and it shouldn't be made even more so by the government's protective order. The government has failed to carry its burden of demonstrating that "good cause" exists for the proposal it presents. The broad-strokes justification it advances simply does not suffice, particularly when the system in place at Sauk County Jail already assuages those generalized concerns. Accordingly, the Court should deny the government's motion and order it to turn over the discovery.

Dated at Madison, Wisconsin, this 14th day of October, 2021.

Respectfully submitted,

Bahrullah Noori, Defendant

*/s/Joseph A. Bugni*
Joseph A. Bugni

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
Joseph_bugni@fd.org